UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 13-62801-CIV-COHN/SELTZER

YAGHOUB MAHDAVIEH and
SEPIDEH MAHDAVIEH, individually
and on behalf of all others similarly situated,

  Plaintiffs,

vs.

SUNTRUST MORTGAGE, INC. and
SUNTRUST BANK,

  Defendants.
_____/

## ORDER GRANTING IN PART AND DENYING IN PART
## DEFENDANTS' MOTION TO DISMISS

**THIS CAUSE** is before the Court on Defendants SunTrust Mortgage Inc. and SunTrust Bank's Motion to Dismiss [DE 12] ("Motion") the Class Action Complaint [DE 1]. The Court has carefully considered the Motion, Plaintiffs' Response in Opposition [DE 23] ("Response"), Defendants' Reply [DE 29], Plaintiffs' Notice of Supplemental Authority [DE 32], Defendants' Notice of Supplemental Authority [DE 55], and is otherwise fully advised in the premises. For the reasons below, the Motion is granted in part and denied in part.

## I. INTRODUCTION

  This is one of a slew of so-called "force-placed" insurance cases filed in this district and around the country. At the heart of these cases are provisions included in many standard-form mortgage contracts that require the borrower to maintain insurance on the mortgaged property to protect the lender's interest in the collateral. If the

borrower fails to do so, the lender has the option of "force-placing" the insurance and passing the cost on to the borrower.  What is not disclosed to borrowers, however, is that their lenders and loan servicers are allegedly colluding with certain insurers to artificially inflate the force-placed insurance premiums in return for unearned kickbacks from the insurers.  The cost of the inflated premium is then either added to the borrower's debt or automatically deducted from the borrower's escrow account, resulting in profit to the colluders.

## II. FACTUAL BACKGROUND

In this putative class action, Plaintiffs Yaghoub and Sepideh Mahdavieh challenge Defendants SunTrust Mortgage Inc. ("STM") and SunTrust Bank's alleged scheme of colluding with certain insurers[1] to force-place insurance on Plaintiffs' property at grossly excessive rates in return for kickbacks to Defendants.

On November 16, 2010, Plaintiffs executed a mortgage on their home in Palm Harbor, Florida.  Cmpt. [DE 1] ¶ 56.  The mortgage is serviced by STM.[2]  Id.  Section 5 of the mortgage requires Plaintiffs to keep their property insured against loss by fire and other hazards.  Id. ¶ 57.  If they fail to do so, section 5 provides that:

> Lender may obtain insurance coverage at Lender's option
> and Borrower's expense.  Lender is under no obligation to
> purchase any particular type or amount of coverage. . . .
> Borrower acknowledges that the cost of the insurance
> coverage so obtained might significantly exceed the cost of
> the insurance that Borrower could have obtained.  Any
> amounts disbursed by Lender under this Section 5 shall
> become additional debt of Borrower secured by this Security

---

[1] Plaintiffs identify those insurers as QBE Specialty Insurance Company and QBE First Insurance Company, Inc. (collectively referred to as "QBE").  Cmpt. [DE 1] ¶ 2.

[2] Although Plaintiffs initially pled that both STM and SunTrust Bank serviced their mortgage, Plaintiffs now concede that only STM services their mortgage.  Response at 9, n.4.

2

Instrument.

Mahdavieh Mortgage, Exhibit 9 to the Cmpt. [DE 1] ¶ 5.  Section 9 further provides that if Plaintiffs fail to perform any agreement in the mortgage, then "Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property . . . ." Id. ¶ 9.

Plaintiffs' insurance lapsed on March 5, 2012.  Cmpt. [DE 1] ¶¶ 64-65.  On April 9, 2012, STM supposedly sent a "Hazard Insurance Warning Reminder Non-Escrow" to Plaintiffs.  Id. ¶ 60.  Plaintiffs, however, did not receive it until months later.  Id.  In the warning reminder, STM advised Plaintiffs that, because their insurance had lapsed on March 5, 2012, STM would be force-placing insurance covering March 5, 2012, through March 5, 2013.  See Hazard Insurance Warning, Exhibit 9.1 to the Cmpt. [DE 1].  STM warned that the annual premium would be $11,311.78.  Id.

Despite not receiving STM's warning in a timely manner, Plaintiffs nevertheless bought their own insurance for their property; the annual premium was $2,138.  Cmpt. [DE 1] ¶ 65.  Plaintiffs produced a copy of the policy to STM on April 19, 2012.  Id. ¶¶ 65-66.  On May 16, 2012, STM bought insurance for Plaintiffs' property from QBE, with the annual premium costing in excess of $15,000.  Id. ¶ 64.   STM then charged Plaintiffs $1,394.61 for about six weeks of coverage, from March 5, 2012, through April 19, 2012.  Id.  Plaintiffs claim that a portion of this premium was then kicked back to STM.  Id. ¶¶ 61-62.

On May 23, 2013, Plaintiffs filed the Class Action Complaint against STM and SunTrust Bank, asserting various Florida law claims against Defendants: breach of contract and breach of the implied covenant of good faith and fair dealing (Count I);

3

unjust enrichment (Count II); breach of fiduciary duty (Count III); and conversion (Count IV).  Defendants now move to dismiss Plaintiffs' claims under Federal Rule of Civil Procedure 12(b)(6).

**III. DISCUSSION**

    A. <u>**Legal Standard.**</u>

Federal Rule of Civil Procedure 12(b)(6) permits a defendant to challenge the legal sufficiency of the factual allegations in the complaint.  <u>See</u> Fed. R. Civ. P. 12(b)(6).  In reviewing a 12(b)(6) motion, the court must accept all of the complaint's factual allegations as true and construe them in the light most favorable to the plaintiff.  <u>Pielage v. McConnell</u>, 516 F.3d 1282, 1284 (11th Cir. 2008).  That said, "conclusory allegations, unwarranted deductions of fact or legal conclusions masquerading as facts" will not prevent dismissal.  <u>Weissman v. Nat'l Ass'n of Sec. Dealers, Inc.</u>, 500 F.3d 1293, 1306 (11th Cir. 2009).  Rather, to avoid dismissal, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face."  <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009).[3]

---

[3] Defendants contend that Federal Rule of Civil Procedure 9(b)'s heightened pleading standard governs the legal sufficiency of Plaintiffs' claims because they purportedly "sound in fraud."  Motion at 7.  The Court disagrees.  When fraud is not an essential element of a claim, only allegations of fraudulent conduct must satisfy Rule 9(b)'s heightened pleading standard.  <u>See, e.g.</u>, <u>Vess v. Ciba-Geigy Corp. USA</u>, 317 F.3d 1097, 1105 (9th Cir. 2003).  Here, fraud is not an essential element of any of Plaintiffs' claims.  That said, to the extent Plaintiffs allege that Defendants made any misrepresentations as part of their force-placed insurance scheme, <u>see</u> Cmpt. [DE 1] ¶¶ 21, 110, the Court need not consider whether those allegations meet the heightened pleading standard because the remaining allegations are sufficient to support Plaintiffs' claims for breach of contract, breach of the implied covenant of good faith and fair dealing, and breach of fiduciary duty.

### B. Whether SunTrust Bank Should Be Dismissed.

At the outset, Defendants argue that the Court should dismiss SunTrust Bank as a defendant because Plaintiffs have not alleged sufficient facts tying SunTrust Bank to any of their theories of liability. The Court agrees.

In their Class Action Complaint, Plaintiffs sue "SunTrust," referring collectively to both SunTrust Bank and STM. Plaintiffs now concede, however, that only STM services Plaintiffs' mortgage; SunTrust Bank does not. Nor have Plaintiffs alleged sufficient facts showing that SunTrust Bank owns or is otherwise bound by Plaintiffs' mortgage. Instead, Plaintiffs ask the Court to judicially notice the unremarkable fact that SunTrust Bank maintains a *portfolio* of loans serviced by STM. See Plaintiffs' Request for Judicial Notice [DE 23-1]. That SunTrust Bank owns a portfolio of loans serviced by STM, however, does not mean that SunTrust Bank owns *Plaintiffs'* loan. Like Defendants, the Court fails to see how this fact—even if it were judicially noticed—would adequately tie SunTrust Bank to any of Plaintiffs' theories of liability under the present formulation of the Class Action Complaint. If Plaintiffs' theory is that SunTrust Bank is liable because it owns Plaintiffs' mortgage, then Plaintiffs should allege as much. Because Plaintiffs have not done so, the Court will dismiss without prejudice all of Plaintiffs' claims against SunTrust Bank.[4]

---

[4] The Court notes that the dismissal of SunTrust Bank eliminates any further need to address Plaintiffs' unjust enrichment claim, since Plaintiffs have also stipulated to the dismissal of that claim against STM. See Response at 20, n.13. Thus, the Court will dismiss Plaintiffs' claim for unjust enrichment in Count III in its entirety.

5

### C. Breach of Contract and Breach of the Implied Covenant of Good Faith and Fair Dealing (Count I).

In Count I, Plaintiffs sue STM for breach of contract and breach of the implied covenant of good faith and fair dealing. As a threshold challenge to these claims, STM argues that Plaintiffs' failure to maintain insurance on their property constitutes a prior breach of their mortgage, thereby precluding their contract claims. Motion at 13. As the Court previously found in Hamilton v. SunTrust Mortgage, Inc., No. 13-60749-CIV, 2014 WL 1285859 (S.D. Fla. Mar. 25, 2014), however, this failure does not preclude Plaintiffs' contract claims:

> "'There are few principles of contract law better established, or more uniformly acknowledged, than the rule that when a contract not fully performed on either side is continued in spite of a known excuse, the right to rely upon the known excuse is waived; in turn, the defense based on the excuse is lost and the party who would otherwise have been excused is liable if he or she subsequently fails to perform.'"

Id. at *7 (quoting MDS (Canada) Inc. v. Rad Source Techs., Inc., 720 F.3d 833, 859 (11th Cir. 2013) (Pryor, J., dissenting in part and concurring in part)).[5] Applying this principle here, the Court finds that once STM chose to continue the mortgage by force-placing insurance after Plaintiffs' coverage lapsed, STM waived the right to rely upon Plaintiffs' failure to maintain insurance as a defense to their contract claims.

#### 1. Breach of Contract.

Defendants next contend that Plaintiffs have failed to state a plausible claim for breach of contract. Under Florida law, a breach of contract claim has three essential elements: "(1) a valid contract; (2) a material breach; and (3) damages." J.J. Gumberg

---

[5] In Bonner v. City of Prichard, 661 F.2d 1206 (11th Cir.1981) (en banc), the Eleventh Circuit adopted as binding precedent all former Fifth Circuit decisions rendered before October 1, 1981.

Co. v. Janis Servs., Inc., 847 So. 2d 1048, 1049 (Fla. 4th DCA 2003).  What constitutes a breach is a question of law; whether a breach has occurred, however, is a question of fact.  Action Nissan, Inc. v. Hyundai Motor Am., 617 F. Supp. 2d 1177, 1195 (M.D. Fla. 2008) (quoting Winter Garden Citrus Growers' Ass'n v. Willits, 113 Fla. 131, 135 (Fla. 1933)).

   Here, Plaintiffs allege that STM breached the mortgage by, among other things, force-placing unnecessary and excessively-priced insurance on Plaintiffs' property.  Compt. [DE 1] ¶ 104.  While Plaintiffs concede that paragraph 5 of their mortgage gave STM discretion to force-place insurance on their property when their coverage lapsed, Plaintiffs contend that paragraph 9 limited STM's discretion to do so to "whatever [was] "reasonable or appropriate" to protect its interests in the property.

   The Court agrees.  While Plaintiffs' mortgage gave STM discretion to force-place insurance, it did not necessarily permit STM to do so in the manner alleged by Plaintiffs.  See Faili v. BAC Home Loans Servicing LP, No. 8:13-cv-1105-JLS (ANx), 2014 WL 255704, at *13 (C.D. Cal. Jan. 23, 2014) ("While the Limiting Provision afforded the Bank of America Defendants discretion to force-place insurance on Plaintiffs' respective properties under the Insurance Provision, it did not necessarily permit the Bank of America Defendants to do so in the manner alleged by Plaintiff."); see also Xi Chen Lauren v. PNC Bank, N.A., No. 2:13-cv-762, 2013 WL 5565511, at *6 (W.D. Pa. Oct. 8, 2013) (noting that a "majority of other courts" have found that "Sections 5 and 9 of the mortgage may be read consistently and in conjunction with each other").  The Court, therefore, declines to dismiss Plaintiffs' breach of contract claim.

7

2. <u>Breach of the Implied Covenant of Good Faith and Fair Dealing.</u>

STM also argues that Plaintiffs have failed to state a plausible claim for breach of the implied covenant of good faith and fair dealing.  Under Florida law, a covenant of good faith and fair dealing is implied in every contract.  <u>Centurion Air Cargo, Inc. v. United Parcel Serv. Co.</u>, 420 F.3d 1146, 1151 (11th Cir. 2005) (citing <u>Cox v. CSX Intermodal, Inc.</u>, 732 So. 2d 1092, 1097 (Fla. 1st DCA 1999)).  It is "designed to protect the parties' reasonable contractual expectations."  <u>Id.</u>

Where, as here, a contract gives a party substantial discretion to promote its self-interest, the implied covenant of good faith serves as a "'gap-filling default rule.'" <u>Speedway SuperAmerica, LLC v. Tropic Enters., Inc.</u>, 966 So. 2d 1, 3 (Fla. 2d DCA 2007) ("Despite broad characterizations of the implied covenant of good faith, we have recognized that it 'is a gap-filling default rule,' which comes into play 'when a question is not resolved by the terms of the contract or when one party has the power to make a discretionary decision without defined standards.") (quoting <u>Publix Super Markets, Inc. v. Wilder Corp. of Del.</u>, 876 So. 2d 652, 654 (Fla. 2d DCA 2004)).  In filling the gaps, the implied covenant of good faith limits that party's ability to exercise its discretion "'capriciously to contravene the reasonable contractual expectations of the other party.'" <u>Id.</u> (quoting <u>Cox</u>, 732 So. 2d at 1097-98).

Here, Plaintiffs claim that STM exercised its discretion in bad faith by force-placing unnecessary and excessive-priced insurance on Plaintiffs' property in return for unearned kickbacks.  As noted above, although the mortgage gave STM substantial discretion to force-place insurance, that discretion was not absolute.  Rather, because STM had "the power to make a discretionary decision without defined standards," <u>Publix</u>

Super Markets, Inc., 876 So. 2d at 654, the implied covenant of good faith limited STM's ability to "'act capriciously to contravene the reasonable contractual expectations of the other party.'" Speedway SuperAmerica, LLC, 966 So. 2d at 3 (quoting Cox, 732 So. 2d at 1097-98).  Viewing Plaintiffs' allegations in the light most favorable to them, the Court finds that Plaintiffs have sufficiently alleged that STM acted capriciously to contravene their reasonable contractual expectations.  Indeed, "[t]o find otherwise at this stage of the proceedings would, in effect, eliminate any reasonable limit on the amount of force-placed insurance that [STM] may lawfully charge to [Plaintiffs].  This, the Court declines to do."  Hamilton, 2014 WL 1285859 at *10.[6]

### D. Breach of Fiduciary Duty (Count III).

In Count III, Plaintiffs claim that STM's creation and management of their escrow account gave rise to a fiduciary duty, which STM breached by charging Plaintiffs for excessive and unnecessary force-placed insurance.  To state a claim for breach of fiduciary duty under Florida law, a plaintiff must allege "the existence of a fiduciary duty, and the breach of that duty such that it is the proximate cause of the plaintiff's damages."  Gracey v. Eaker, 837 So. 2d 348, 353 (Fla. 2002).  A fiduciary duty arises where "'a fiduciary relation exists as a fact, in which there is confidence reposed on one side and the resulting superiority and influence on the other.'"  Helinautica Inter., S.A. v. Engage Aviation, LLC, No. 8:11-CV-676-T-17TGW, 2011 WL 5553896, at *2 (M.D. Fla. Nov. 15, 2011) (quoting The Florida Bar v. Adorno, 60 So. 3d 1016, 1028 (Fla. 2011)).

---

[6] The Court is also unpersuaded by STM's argument that Plaintiffs' claim fails because they did not alleged an express breach of the mortgage.  See Motion at 10.  As discussed above, Plaintiffs have alleged an express breach.

9

While a lender generally does not owe a fiduciary duty to its borrower under Florida law, a fiduciary duty may arise in "special circumstances." Gordon v. Chase Home Fin., LLC, No. 8:11-cv-2001-T-33EAJ, 2012 WL 750608, at *4 (M.D. Fla. Mar. 7, 2012) (citations omitted); see also Capital Bank v. MVB, Inc., 644 So. 2d 515, 518 (Fla. 3d DCA 1994) ("Generally, the relationship between a bank and its borrower is that of creditor to debtor, in which parties engage in arms-length transactions, and the bank owes no fiduciary responsibilities."). "These special circumstances include where the lender [1] 'takes on extra services for a customer, [2] receives any greater economic benefit than from a typical transaction, *or* [3] exercises extensive control.'" Building Educ. Corp. v. Ocean Bank, 982 So. 2d 37, 41 (Fla. 3d DCA 2008) (emphasis added) (quoting Susan Fixel, Inc. v. Rosenthal & Rosenthal, Inc., 842 So. 2d 204, 208 (Fla. 3d DCA 2003)). In addition, an escrow holder generally owes a fiduciary duty to the parties to the escrow transaction. Decarlo v. Griffin, 827 So. 2d 348, 351 (Fla. 4th DCA 2002) (citing Watkins v. NCNB Nat. Bank of Fla., 622 So. 2d 1063, 1065 (Fla. 3d DCA 1993)).

Here, Plaintiffs claim that STM, as the escrow holder, breached its fiduciary duty to Plaintiffs by charging them for unnecessary and excessive force-placed insurance. Plaintiffs further allege that STM received a greater economic benefit than from a typical mortgage transaction because it received unearned kickbacks in connection with its force-placed insurance scheme. These allegations, viewed in the light most favorable to Plaintiffs, are sufficient to sustain Plaintiffs' breach of fiduciary claim. See Gordon, 2012 WL 750608 at *5 (finding plausible claim for breach of fiduciary duty under Florida law where plaintiffs alleged that their lender received a greater economic benefit than from a typical mortgage transaction in the form of kickbacks); see also Cannon v. Wells

Fargo Bank, N.A., 917 F. Supp. 2d 1025, 1056 (N.D. Cal. 2013) (same); cf. Lass v. Bank of Am., N.A., 695 F.3d 129, 141 (1st Cir. 2012) (reinstating breach of fiduciary claim against bank for charging plaintiff's escrow account for excessive force-placed insurance and related commissions).

### E. Conversion (Count IV).

Finally, STM argues that Plaintiffs have failed to state a plausible claim for conversion under Florida law. "[A] conversion is an unauthorized act which deprives another of his property permanently or for an indefinite time." Mayo v. Allen, 973 So. 2d 1257, 1259 (Fla. 1st DCA 2008) (citations omitted). To state a claim for conversion of money, a plaintiff must allege: "(1) specific and identifiable money is involved in the alleged offense; (2) the plaintiff enjoys an immediate right to possess that money; (3) an unauthorized act has occurred that has deprived the plaintiff of that money; and (4) the plaintiff has made a demand for return of the money, and the defendant has refused to comply." Lahtinen v. Liberty Inter. Fin. Servs., Inc., No. 13-61766-CIV, 2014 WL 351999, at *5 (S.D. Fla. Jan. 31, 2014) (citing United States v. Bailey, 288 F. Supp. 2d 1261, 1264-65 (M.D. Fla. 2003)).

In this case, Plaintiffs claim that, by debiting their escrow account to pay for the excessive force-placed insurance, STM converted money in their escrow account. These allegations, however, fail to state a claim for conversion. Plaintiffs have not pointed to any "specific and identifiable" sum of money that STM wrongfully converted. Rather, as STM points out, Plaintiffs only refer to some unspecified and unidentified portion of their escrow "funds" that was purportedly converted. This is insufficient as a matter of law. Plaintiffs' conversion claim, therefore, is dismissed without prejudice.

11

## IV. CONCLUSION

For these reasons, it is **ORDERED AND ADJUDGED** that:

(1) Defendants SunTrust Mortgage Inc. and SunTrust Bank's Motion to Dismiss [DE 12] is **GRANTED in part and DENIED in part**;

(2) Plaintiffs' unjust enrichment claim against SunTrust Mortgage, Inc. in Count II is **DISMISSED with prejudice**;

(3) Plaintiffs' conversion claim in Count IV is **DISMISSED without prejudice**;

(4) All of Plaintiffs' claims against Defendant SunTrust Bank are **DISMISSED without prejudice**;

(5) Plaintiffs' Motion for Oral Argument [DE 30] on Defendants' Motion is **DENIED**; and

(6) Plaintiffs shall amend their complaint, if at all, no later than 14 days after the date of this Order.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, this 7th day of April, 2014.

_____
JAMES I. COHN
United States District Judge

Copies provided to counsel of record via CM/ECF.